UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PRO2SERVE PROFESSIONAL           )
PROJECT SERVICES, INC.,          )
                                 )
        Plaintiff/Counter-Defendant,   )
                                 )
v.                               )      No.:   3:07-CV-336
                                 )             (VARLAN/SHIRLEY)
BWXT Y-12, LLC,                  )
                                 )
        Defendant/Counter-Plaintiff.   )


## MEMORANDUM AND ORDER

This civil action is before the Court on Defendant/Counter-Plaintiff BWXT Y-12,

LLC's ("Defendant BWXT") Motion for Partial Summary Judgment [Doc. 13] and Motion

of the Defendant for Summary Judgment on All of the Plaintiff's Claims for REAS. [Doc.

23.] Plaintiff/Counter-Defendant Pro2Serve Professional Project Services, Inc., ("Plaintiff

P2S") has filed briefs in opposition to Defendant BWXT's respective summary judgment

motions. [Docs. 18, 27.] The parties have also submitted reply and supplemental briefs in

this matter. [Docs. 21, 38, 71, 74, 77, 85.] Additionally, the Court heard oral argument on

these pending motions on February 12, 2009. [*See* Doc. 71.] These motions are now ripe.

The Court has carefully considered the pending motions, along with the parties' briefs,

affidavits, and other relevant filings. [*See* Docs. 13, 18, 21, 27, 38, 71, 74, 77, 85, 87.] For

the reasons set forth herein, Defendant BWXT's Motion for Partial Summary Judgment

[Doc. 13] and Motion of the Defendant for Summary Judgment on All of the Plaintiff's

Claims for REAS [Doc. 23] will be denied.

## I.     BACKGROUND

On September 30, 2004, Plaintiff P2S and Defendant BWXT entered into Subcontract

No. 4300037616 (the "Subcontract"), which referred to Plaintiff P2S as "the Seller" and

Defendant BWXT as "the Company. " [Doc. 1-1 at 2.] The Subcontract's "Statement of

Work" provided:

> The Seller hereby undertakes and agrees to provide Compressed Air Facility
> Engineering and Procurement Services, in accordance with the Statement of
> Work, (SOW), SW-PE-900001-A001, Rev. O, dated April 2004, including all
> amendments (15 each) issued thereto and related documents as shown.

[Doc. 1-1 at 2.]

In the Subcontract, the parties agreed to various terms, including the period of

performance, consideration and payment, and the delivery schedule. [*See* Doc. 1-1.] In

addition to the Subcontract itself, the parties' agreement is governed by "General Terms &

Conditions Fixed Price (FP 6/03)" ("General Terms"). [Doc. 1-2.] In Section 1.16 of the

General Terms, if Defendant BWXT makes a "change" within the general scope of the

Subcontract, "an equitable adjustment shall be made in the price and/or delivery schedule and

other affected provisions." [Doc. 1-2 at 4.] Section 1.16 also states that "[a]ny claim for

adjustment by Seller must be made within 30 days from the date of receipt of Company's

change notice." [Doc. 1-2 at 4.]

According to Plaintiff P2S, Defendant BWXT made oral and email directions outside the scope of the Subcontract. [Doc. 18-1 at 2.] Plaintiff P2S then made seven "Requests for Equitable Adjustment" ("REAs") to Defendant BWXT: (1) REA 1 - Rewiring; (2) REA 2 - Unloading delay (Airtek); (3) REA 3 - Additional PI&D tagging; (4) REA 4 - Additional training, start-up; (5) REA 5 - Additional project management support; (6) REA 6 - Unloading delay (Eaton); and (7) REA 7 - Additional alarms (Honeywell). [*See* Doc. 1-3 at 2.] Defendant BWXT allegedly did not issue written change orders for the work subject to these REAs. [Doc. 18-1 at 2.] According to Plaintiff P2S, these REAs totaled $321,618.35 in additional compensation. [Doc. 1 at 2.]

According to Plaintiff P2S, it became aware of the various REA claims and first submitted the respective REAs on the following dates: (1) REA 1 - Rewiring - Awareness on January 26, 2007, Submission on August 24, 2006; (2) REA 2 - Unloading delay (Airtek) - Awareness on February 4, 2006, Submission on December 4, 2006; (3) REA 3 - Additional PI&D tagging - Awareness no later than December 12, 2006, Submission on January 4, 2007; (4) REA 4 - Additional training, start-up - Awareness on November 30, 2006, Submission on January 5, 2007; (5) REA 5 - Additional project management support - Awareness no later than March 8, 2006, Submission on February 28, 2007; (6) REA 6 - Unloading delay (Eaton) - Awareness on January 30, 2006, Submission on August 24, 2006; and (7) REA 7 - Additional alarms (Honeywell) - Awareness on November 11, 2006, Submission on July 23, 2007. [Doc. 13-1 at 2.]

3

In a letter dated March 26, 2007, Defendant BWXT denied REAs 1-6 "pending submission of additional information adequate to permit the Company to fully understand and reply accordingly." [Doc. 27-5 at 1.] According to Plaintiff P2S, Defendant BWXT has not responded to REA 7. [Doc. 1 at 2.] In a letter dated July 19, 2007, Defendant BWXT informed Plaintiff P2S that it planned to respond to Plaintiff P2S's REA requests by August 15, 2007. [Doc. 27-7 at 1.] In a letter dated August 14, 2007, Defendant BWXT requested a meeting with Plaintiff P2S "to discuss the outstanding Requests for Equitable Adjustments (REA's) under the subject subcontract." [Doc. 27-8 at 1.] On September 5, 2007, Plaintiff P2S filed this suit alleging, among other things, that Defendant BWXT's "implicit denial of [Plaintiff P2S's] Claims and its failure to make equitable adjustments in the price for changes it made within the general scope of the Contract constitutes a breach of contract." [Doc. 1 at 3.]

## II.    ANALYSIS

Defendant BWXT has filed the Motion for Partial Summary Judgment [Doc. 13] and the Motion of the Defendant for Summary Judgment on All of the Plaintiff's Claims for REAS [Doc. 23], and the Court will address each motion in turn. The Court notes that there are other claims in this matter not subject to the present motions for summary judgment. Thus, for purposes of the pending motions for summary judgment, the Court's analysis is limited to the breach of contract claims based on the work subject to REAs 1-7.

4

## A. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id.* at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

5

**B.  Motion for Partial Summary Judgment [Doc. 13]**

In the Motion for Partial Summary Judgment [Doc. 13], Defendant BWXT contends that the 30-day limitations period in Section 1.16 of the Subcontract ("Section 1.16") prevents Plaintiff P2S from pursuing claims based on REAs 1, 2, 4, 5, 6, 7.  Section 1.16 entitled "Changes" provides:

> (a) Company may at any time, by written notice, make changes within the general scope of this Agreement in any one or more of the following: (1) description of the work to be performed; (2) method and manner of performance; (3) the amount of work to be furnished.  If any such change causes a difference in the cost, or the time required for performance, the equitable adjustment shall be made in the price and/or delivery schedule and other affected provisions.  Such adjustment shall be made by written amendment to this Agreement signed by both parties.  <u>Any claim for adjustment by Seller must be made within 30 days from the date of receipt of Company's change notice, although Company in its sole discretion may receive and act upon any claim for adjustment at any time before final payment.</u>  Failure to agree to any adjustment shall be settled in accordance with Part 1.2.

> (b) Only the Subcontract Administrator is authorized on behalf of Company to issue changes whether formal or informal.  If Seller considers that any direction or instruction by Company personnel constitutes a change, Seller shall not rely upon such instruction or direction without written confirmation from the Subcontract Administrator.  Nothing in this clause, including any disagreement with Company about the equitable adjustment, shall excuse Seller from proceeding with the Agreement as changed.

[Doc. 1-2 at 4 (emphasis added).]

Defendant contends that summary judgment should be granted as to REAs 1, 2, 4, 5, 6, and 7 because Plaintiff P2S did not make the claims for equitable adjustment for these REAs within thirty days from receipt of the change notice.  Plaintiff P2S responds that the limitations period in Section 1.16 is inapplicable because there are no written change notices

6

that triggered the thirty day limitations period. Plaintiff P2S contends that Defendant BWXT has erroneously considered "awareness" of a claim sufficient for triggering the limitations requirement in Section 1.16 and that the Subcontract sets no time limit for submitting the REAs at issue. Thus, the parties' dispute concerns contract interpretation of Section 1.16.

In this case, Tennessee law governs how the Court should interpret the Subcontract and General Terms. According to the Tennessee Supreme Court, "[w]hen resolving disputes concerning contract interpretation, [the Court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). In making this determination, the Court must first determine whether the written contract is ambiguous. *Quebecor Printing Corp. v. L & B Mfg. Co.*, 209 S.W.3d 565, 578 (Tenn. Ct. App. 2006). If the language of a contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Id.* (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002)). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Planters Gin Co.*, 78 S.W.3d at 890 (citation omitted). If the terms of a contract are ambiguous, the parties' interpretation cannot be determined by a literal interpretation of the language, and courts must resort to other rules of construction. *Id.* Notably, contractual ambiguity does not arise simply because the contracting parties interpret the contract differently. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). Contract provisions should be considered in the context of the entire contract. *D & E Constr. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 519 (Tenn. 2001).

7

Questions of contract interpretation are "generally treated as a question of law because the words of the contract are definite and undisputed." *Planters Gin Co.*, 78 S.W.3d at 890. "Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact." *Quebecor Printing Corp.*, 209 S.W.3d at 578 (citing *Planters Gin Co.*, 78 S.W.3d at 890).

With this guidance from the Tennessee courts in mind, the Court proceeds to interpret the limitations period provision in Section 1.16. Defendant BWXT relies on the following sentence for its limitations argument: "Any claim for adjustment by Seller must be made within 30 days from the date of receipt of Company's change notice." The parties dispute what constitutes a "change notice" for purposes of this sentence. Because the Court must consider this term in the context of the entire contract, the Court looks to other parts of Section 1.16 for guidance. Section 1.16 begins by stating that "Company may at any time, by written notice, make changes within the general scope of this Agreement in any one or more of the following . . . ." Though the argument has been made that the use of the word "may" means that the written notice is not required or at least creates an ambiguity as to what phrase the word "may" modifies, the Court finds that the word "may" modifies the phrase "make changes." Notably, the phrase "by written notice" is set off by commas from the rest of the sentence, so it is a nonessential element of the sentence and is unaffected by the word "may." This is not to suggest that "by written notice" is not pertinent when interpreting Section 1.16. Rather, it merely means that the word "may"does not modify the phrase "by written notice" in this particular sentence due to the commas surrounding the phrase. Thus,

8

Defendant BWXT "may" make changes within the scope of the parties' Agreement; however, it must make these discretionary changes in written form. It is this "written notice" that triggers the 30-day limitations period.

It is contended that the first sentence Section 1.16(b) creates ambiguity as to the whether the notice must be in writing due to the use of the words "formal or informal." This sentence states, "Only the Subcontract Administrator is authorized on behalf of Company to issue changes whether formal or informal." Notably, the next sentence states, "If Seller considers that any direction or instruction by Company personnel constitutes a change, Seller shall not rely upon such instruction or direction without written confirmation from the Subcontract Administrator." Because the Subcontract Administrator is "Company personnel," this sentence indicates that even direction or instruction comes from the Subcontract Administrator, "written confirmation" is needed. Thus, questions about whether the words "formal or informal" refer to a writing are resolved by the "written confirmation" requirement discussed in the sentence that follows.

In light of the above, the Court is unpersuaded by Defendant BWXT's argument that "awareness" of a claim constitutes a "change notice" for purposes of Section 1.16. Plaintiff P2S has presented evidence that it did not receive written "change notices" for the work in the disputed REAs. [Doc. 18-1 at 2.] Because the evidence must be construed in a light most favorable to Plaintiff P2S, partial summary judgment is improper since there is evidence that Plaintiff P2S did not receive the written change notices needed to trigger the 30-day limitations period. Thus, at least for purposes of this partial summary judgment motion,

9

Plaintiff P2S is not precluded from making its claims due to the 30-day limitations period provided by Section 1.16. In other words, Defendant BWXT cannot prevail on summary judgment simply because Plaintiff P2S admitted "awareness" of the respective claims more than thirty days before submitting the claims as REAs. Section 1.16 only provides for the triggering of the limitations period when Plaintiff P2S received the change notice in writing, and the record currently lacks evidence of the necessary written notices.

In its reply, Defendant BWXT argues that such an interpretation is incorrect because Section 1.16(b) states:

> If Seller considers that any direction or instruction by Company personnel constitutes a change, Seller shall not rely upon such instruction or direction without written confirmation from the Subcontract Administrator.

[Doc. 1-2 at 4.] Defendant BWXT contends the use of the word "any" indicates that Plaintiff P2S must seek written confirmation from the Subcontract Administrator and that Plaintiff P2S cannot avoid the 30-day limitations period by failing to seek written confirmation. While this sentence may preclude Plaintiff P2S from seeking relief for the REAs in and of itself, the Court disagrees that the sentence necessarily triggers the 30-day limitations period, which is the subject of Defendant BWXT's motion for partial summary judgment. [Doc. 13.] Section 1.16 states that "[a]ny claim for adjustment by Seller must be made within 30 days from the date of receipt of Company's change notice," so this provision on its face requires a "receipt of Company's change notice" for the limitations period to be applicable. To the extent Defendant BWXT contends that this interpretation would allow Plaintiff P2S to avoid the 30-day limitations period simply by failing to comply with the "written confirmation"

provision in Section 1.16(b), the Court notes that it must avoid relieving parties from their contractual obligations simply because these obligations later prove to be burdensome or unwise. *Walker v. City of Cookeville*, No. M2002-01441-COA-R3-CV, 2003 WL 21918625, at *5 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002)). Thus, even if this interpretation proves burdensome or unwise for Defendant BWXT, it is nonetheless what the parties agreed to in the General Terms.

Nevertheless, this interpretation does not mean that Section 1.16 is inapplicable to Plaintiff P2S. The "written confirmation" provision may be another basis for precluding Plaintiff P2S's REA 1-7 claims, regardless of the 30-day limitations requirement. However, for purposes of the partial summary judgment motion, the "written confirmation" provision does not alter the plain language of the limitations provision requiring a claim for adjustment be made within 30 days of "receipt of Company's change notice."[1]

For these reasons, the Court will deny Defendant BWXT's Motion for Partial Summary Judgment [Doc. 13] as it is based on the applicability of the 30-day limitations period provided in Section 1.16.

------------------------------------------------------------

[1]Defendant BWXT's argument regarding the "written confirmation" requirement in Section 1.16(b) arguably provides an alternative reason why Plaintiff P2S's REA 1-7 claims are barred. However, the Sixth Circuit has recognized that issues are "waived when they are raised for the first time . . . in replies to responses." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 533 (6th Cir. 2008). Thus, the Court will not consider this issue to the extent it provides a potentially alternative basis to dismiss Plaintiff P2S's REA claims for purposes of the Motion for Partial Summary Judgment. [Doc. 13.] However, the Court will consider this argument to the extent Defendant BWXT incorporated and specifically raised the argument in its Motion of the Defendant for Summary Judgment on All of the Plaintiff's Claims for REAs. [Doc. 23.]

**C.** **Motion of the Defendant for Summary Judgment on All of the Plaintiff's**

**Claims for REAs [Doc. 23]**

In its other summary judgment motion, Defendant BWXT contends that summary

judgment is appropriate due Section 1.16 and another section in the Subcontract entitled

"Technical Direction," which provides:

> Performance of the work under this Subcontract shall be subject to the technical direction of the Company's Subcontract Technical Representative (STR). The term technical direction is defined as: (1) directions to the seller which shift work emphasis between work areas, require pursuit of certain lines of inquiry, fill in details, or otherwise serve to facilitate the contractual statements of work; (2) provision of written information to the Seller which assists in the interpretation of drawings, specifications, or technical portions of the work description; and (3) review and approval of technical reports, drawings, specifications, and technical information to be delivered by the Seller to the Company under the Subcontract.

> Technical Direction must be within the scope of work stated in the Subcontract. The STR does not have the authority to, and may not, issue any direction which: (1) constitutes an assignment of work outside the SOW, SW-PE-900001, A001, Rev. O; (2) constitutes change as defined in the Subcontract clause entitled Changes; (3) causes an increase or decrease in any manner of the total estimated subcontract price, the fixed fee (if any), or the time required for subcontract performance; or (4) changes any of the expressed terms, conditions, or specifications in the Subcontract.

> All technical direction shall be issued in writing by the STR and identified as technical direction.

> The Seller shall proceed promptly with the performance of technical direction duly issued by the STR in the manner prescribed by this article and within the authority under the provisions of this article. If, in the opinion of the Seller, any instruction or direction by the STR falls within one of the categories defined in V.B. (1) through (4) above, the Seller shall not proceed but shall notify the Subcontract Administrator in writing within two (2) working days after receipt of any such instruction or direction and shall request the Subcontract Administrator to modify the Subcontract accordingly. Upon

12

receiving the notification from the Seller, the Subcontract Administrator shall either: (1) advise the Seller in writing within 30 days after receipt of the Sellers letter that the technical direction is within the scope of the Subcontract effort and does not constitute a change under the Changes clause of the Subcontract; (2) inform the Seller in writing within 30 days after receipt of the Sellers letter not to perform under the direction and to cancel the direction; or (3) advise the Seller within a reasonable time that the Company will issue a written change order.

Failure of the Seller and Subcontract Administrator to agree that the technical direction is within the scope of the Subcontract or a failure to agree upon the contract action to be taken with respect thereto shall be subject to the provisions of the clause entitled "Resolution of Disputes" of the Terms and Conditions.

[Doc. 1-1 at 4.]

According to Defendant BWXT, Plaintiff P2S's REA claims are based on alleged "technical direction." In light of the "Technical Direction" provision, Defendant BWXT contends that Plaintiff P2S's argument ignores the strict limits on the authority of the Subcontract Technical Representative ("STR") and the procedure for pursuing additional compensation when confronted with technical direction. Because the affidavit of Raymond K. Alexander ("Mr. Alexander") states that REAs 1, 3, 4, and 6 "constituted technical direction," Defendant BWXT argues that summary judgment should be granted as to these particular REAs. [Doc. 18-1 at 2.]

Plaintiff P2S responds that the requirements of the "Technical Direction" section do not bar recovery. First, Plaintiff P2S submits the declaration of Mr. Alexander which states that he used the term "technical direction" in the engineering sense and not to indicate that the directives were "technical direction" within the meaning of the "Technical Direction"

section of the Subcontract. [Doc. 27-1 at 4-5.] Second, Plaintiff P2S argues that the 2-day trigger of the "Technical Direction" section were not triggered because Defendant BWXT did not put in writing that the oral and email directives from the STR nor identify them as "technical direction," as required by the "Technical Direction" section. Plaintiff P2S also contends that the "Technical Direction" section adds ambiguity to the contract because "changes" are not defined in the Subcontract.[2]

Because the parties' arguments require interpretation of the "Technical Direction" section, the Court keeps in mind the standards for contract interpretation provided by Tennessee courts discussed above. The provision at issue states that "[i]f, in the opinion of the Seller, any instruction or direction by the STR falls within one of the categories defined in V.B. (1) through (4) above, the Seller shall not proceed but shall notify the Subcontract Administrator in writing within two (2) working days after receipt of any such instruction or direction and shall request the Subcontract Administrator to modify the Subcontract accordingly." These categories include any direction which: "(1) constitutes an assignment of work outside the SOW, SW-PE-900001, A001, Rev. O; (2) constitutes change as defined in the Subcontract clause entitled Changes; (3) causes an increase or decrease in any manner of the total estimated subcontract price, the fixed fee (if any), or the time required for

---

[2]The Court notes that Plaintiff P2S also raises the argument that Defendant BWXT waived the Subcontract's timing requirements, specifically referring to the 30-day limitations period in Section 1.16. Because the Court has determined that the 30-day limitations period is inapplicable to claims for REAs 1-7 for purposes of Defendant BWXT's Motion for Partial Summary Judgment [Doc. 13], the Court does not address the waiver argument for purposes of ruling on Defendant BWXT's Motion of the Defendant for Summary Judgment on All of the Plaintiff's Claims for REAS. [Doc. 23.]

subcontract performance; or (4) changes any of the expressed terms, conditions, or specifications in the Subcontract."

Plaintiff P2S contends that this 2-day limitation is inapplicable because Defendant BWXT's STR, Rebecca Spiva ("Ms. Spiva"), failed to issue "technical direction" in writing nor identify it as so. This argument is unpersuasive because the language of this provision describes two categories of "direction." There is a "technical direction of the Company's Subcontract Technical Representative (STR)," which is subject to the writing and identifier requirement. There is also the broader category of "any instruction or direction by the STR," which is subject to the 2-day limitation requirement. The distinction between "technical direction" and the broader category is further demonstrated by the repeated use of the word "any" before the phrase "instruction or direction" in the sentence providing for the 2-day limitations period. Absent the word "any," Plaintiff P2S's argument may have been more persuasive. However, the language in the "Technical Direction" section plainly states that the 2-day limitations period applies to "any instruction or direction," not just "technical direction." Notably, the "Technical Direction" section does not state that "any instruction or direction by the STR" is technical direction nor that "any instruction or direction by the STR" must be issued in writing. As a result, the lack of a writing designating something as "technical direction" does not preclude application of the 2-day limitations period to "any instruction or direction," which includes oral and email directives from Defendant BWXT.

Plaintiff P2S contends that this interpretation creates a gap in the Subcontract which permits Defendant BWXT's STR to give instructions that raises costs for Plaintiff P2S

without providing the opportunity to seek equitable adjustments for the extra work. The Court notes that the "Technical Direction" section provides Plaintiff P2S with a procedure to address such situations. If Plaintiff P2S is of the opinion that "any instruction or direction by the STR" constitutes a "change," Plaintiff P2S is not required to proceed with the instruction or direction. The Subcontract specifically states that Plaintiff P2S "shall not proceed but shall notify the Subcontract Administrator within two (2) working days after receipt of any such instruction or direction and shall request the Subcontract Administrator to modify the Subcontract accordingly." The Subcontract then places a burden on the Subcontract Administrator to take one of three specified actions. If the parties fail to agree with the Subcontract Administrator's action, they are to proceed with the provisions of the "Resolution of Disputes" section in the General Terms. Based on these provisions, Plaintiff P2S is provided with an agreed-upon means to address a situation where the STR gives directions that Plaintiff P2S believes should be subject to equitable adjustment. Thus, the Court is unpersuaded by Plaintiff P2S's argument that there is a gap in the Subcontract.

On a related matter, Plaintiff P2S has also argued that Defendant BWXT took advantage of an alleged "gap" in the Subcontract by instructing Plaintiff P2S to perform work outside the scope of the Subcontract while treating such requests as being within the scope of the Subcontract. While the Court agrees that the parties' agreement does not require Plaintiff P2S to perform work outside the scope of the Subcontract, the Subcontract does provide a procedure for Plaintiff P2S to follow if it believes such a situation arises. The "Technical Direction" section states that "[i]f, in the opinion of the Seller, any instruction or

16

direction by the STR falls within one of the categories defined in V.B. (1) through (4) above, the Seller shall not proceed but shall notify the Subcontract Administrator in writing within two (2) working days after receipt of any such instruction or direction and shall request Subcontract Administrator to modify the Subcontract accordingly." These categories include any direction which: constitutes an assignment of work outside the State of Work; causes an increase or decrease in any manner of the total estimated subcontract price; or changes any of the expressed terms, conditions, or specifications of the Subcontract. Because the "Technical Direction" section provides Plaintiff P2S with a procedure to follow when the STR requests extra work Plaintiff P2S considers outside the scope of the Subcontract, the Court disagrees that there is the sort of "gap" in the parties' agreement as Plaintiff P2S contends.

In light of all of this, the Court need not address the parties' dispute regarding whether Mr. Alexander's affidavit statement that REAs 1, 3, 4, and 7 constituted "technical direction." In order to trigger the 2-day limitations period, the key inquiry is whether the STR, Ms. Spiva, provided "any instruction or direction" that in Plaintiff P2S's opinion fell into one of the four specified categories in the "Technical Direction" section. If so, claims based on such "instruction or direction" would be subject to the 2-day limitations period.

The Court is also unpersuaded by Plaintiff P2S's argument that the Subcontract's definition in the section entitled "Changes," or Section 1.16, is ambiguous. In the "Technical Direction" section, there is reference to "any direction which . . . constitutes change as defined in the Subcontract clause entitled Changes." In Section 1.16, it states that "Company

17

may at any time, by written notice, make changes within the general scope of this Agreement in any one or more of the following: (1) description of the work to be performed; (2) method and manner of performance and (3) the amount of work to be furnished." Furthermore, the Section 1.16 section states that Plaintiff P2S should seek "written confirmation from the Subcontract Administrator" if it "considers that any direction or instruction by Company personnel constitutes a change." Thus, Section 1.16 provides both descriptions of what constitutes a "change" and a means to determine whether an instruction constitutes a "change" by seeking written confirmation from the Subcontract Administrator. As a result, Plaintiff P2S's ambiguity argument as to the meaning of "changes" is unpersuasive.

Defendant BWXT also cites to Section 1.16 in support of its argument that REAs 1-7 should be dismissed. As in the "Technical Direction" section, Section 1.16 uses the word "any" when providing that "[i]f Seller considers that any direction or instruction by Company personnel constitutes a change, Seller shall not rely upon such instruction or direction without written confirmation from the Subcontract Administrator." The use of the word "any" plainly provides that the Seller must seek written confirmation from the Subcontract Administrator for work it considers a "change" potentially subject to "equitable adjustment." Based on the language in this provision, the Court agrees that Subcontract clearly requires written confirmation from the Subcontract Administrator in situations where Plaintiff P2S perceives an instruction as constituting a "change." It is noted that this particular provision does not have a time limitation like the 2-day limitations period contained in the "Technical Direction" section.

18

Plaintiff P2S argues that other language in the Subcontract renders the provisions requiring confirmation of "changes" from the Subcontract Administrator ambiguous. The last sentence of Section 1.16(b) states that "[n]othing in this clause, including any disagreement with Company about the equitable adjustment, shall excuse Seller from proceeding with the Agreement as changed." The argument is made that this sentence creates an ambiguity regarding the previous sentence, which provides that Plaintiff P2S "shall not rely upon such instruction or direction without written confirmation from the Subcontract Administrator." In other words, Plaintiff P2S questions how Section 1.16 can provide both that the Seller cannot rely on instructions or direction without written confirmation while also not excusing it from proceeding with "the Agreement as changed" if there is a disagreement about "the equitable adjustment." The Court finds no such ambiguity. Because the last sentence uses the words "as changed," the last sentence provides that Plaintiff P2S must perform work subject to a change notice in accordance with Section 1.16(a). Thus, the provision of "any direction or instruction by Company personnel" that Plaintiff P2S "shall not rely upon" discussed in the previous sentence is distinguishable from the "change" in the last sentence. That is to say, the last sentence does not require Plaintiff P2S to follow "any direction or instruction by Company personnel." It only requires Plaintiff P2S to proceed with work that Defendant BWXT designated as a "change" in writing. Accordingly, the last sentence of Section 1.16 does not create an ambiguity or contradiction in that section.

19

For all of these reasons, the Court finds that the provisions in the Subcontract and General Terms relevant to the summary judgment motion are not ambiguous. The "Technical Direction" section requires Plaintiff P2S to notify the Subcontract Administrator within two (2) working days after receiving "any instruction or direction by the STR" that "in the opinion of the Seller . . . falls within one of the categories defined in V.B. (1) through (4)." Additionally, Section 1.16 expressly informs Plaintiff P2S that if it "considers that any direction or instruction by Company personnel constitutes a change, Seller shall not rely upon such instruction or direction without written confirmation from the Subcontract Administrator."

Nevertheless, the Court finds that summary judgment on the claims for the subject REAs is inappropriate at this time. Under Tennessee law, "[p]arties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Barnes & Robinson Co. v. Onesource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006). This implied-in-law covenant has two purposes: (1) it honors the contracting parties' reasonable expectations; and (2) it protects the rights of the parties to receive the benefits of the agreement they entered into. *Id.* (citations omitted). Notably, a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather "may be an element or circumstance of recognized torts, or breaches of contracts." *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989).

In the present case, Plaintiff P2S has presented evidence that when its employees inquired about the work at issue in the REA 1-7 claims, they were informed to do the work

20

if Plaintiff P2S "wanted to be paid" in addition to other alleged threats "to take the matter to the contract administrator" and "get Contracts involved." [Docs. 18-2 at 2, 18-3 at 2.] Construing this evidence in a light most favorable to Plaintiff P2S, the non-movant, there remains a genuine issue of material fact regarding the implied duty of good faith and fair dealing. In this case, the Subcontract expressly provides a procedure for Plaintiff P2S to follow when instructed to perform work it considered a "change" or outside of the scope of the Subcontract. However, when construed in a light most favorable to Plaintiff P2S, the actions of Ms. Spiva and others arguably did not protect Plaintiff P2S's rights to receive the benefits of these agreed upon procedures, in contravention of the implied duty of good faith and fair dealing. As this duty may be an element or circumstance of the breach of contract claims based on REAs 1-7, summary judgment is inappropriate at this time.

Finally, in its Supplemental Brief in Opposition to Defendant's Motions for Summary Judgment [Doc. 85], Plaintiff P2S states that Defendant BWXT recently produced 9,000 documents in this matter. Plaintiff P2S contends that this recent disclosure illustrates the prematurity of the motions for summary judgment. Defendant BWXT has responded that Plaintiff P2S has not been hindered in any way by the recent document production. [Doc. 87.] The Court notes that because the Subcontract provisions at issue are not ambiguous, these new documents would not change the analysis regarding the issues of law discussed above. However, to the extent these documents may provide evidence relevant to the remaining issues of fact in this case, such as the existence of relevant written change notices, communications with the Subcontract Administrator, and evidence of the alleged actions of

21

Ms. Spiva and others, these recent disclosures add concern about the appropriateness of summary judgment at this time.

## III.   CONCLUSION

For the reasons set forth herein, Defendant BWXT's Motion for Partial Summary Judgment [Doc. 13] and Motion of the Defendant for Summary Judgment on All of the Plaintiff's Claims for REAS [Doc. 23] are hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE